UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEATRICE BOLER**, individually and as a class representative; | : | |
| | : | |
| **PASTOR EDWIN ANDERSON and MRS. ALLINE ANDERSON**, individually and as a class representatives; | : | |
| | : | |
| **EPCO SALES LLC**, individually and as a class representative | : | JUDGE: |
| | : | CASE NUMBER 16-cv- |
| *Plaintiffs*, | : | **CLASS ACTION** |
| | : | **JURY DEMAND** |
| v. | : | |
| | : | |
| **DARNELL EARLEY,** (individually, and in his official capacity as Emergency Manager) City Hall 1101 South Saginaw Street Flint, MI 48502; | : | |
| | : | |
| and, | : | |
| | : | |
| **GERALD AMBROSE,** (individually, and in his official capacity as Emergency Manager) City Hall 1101 South Saginaw Street Flint, MI 48502; | : | |
| | : | |
| and, | : | |
| | : | |
| **DAYNE WALLING,** (individually, and in his | : | |

official capacity as Mayor)                          :
City Hall                                            :
1101 S. Saginaw Street                               :
Flint, Michigan 48502;                               :
                                                     :
and,                                                 :
                                                     :
**CITY OF FLINT,**                                   :
c/o Flint City Attorney                                        :
1101 S. Saginaw Street                               :
Flint, Michigan 48502;                               :
                                                     :
and,                                                 :
                                                     :
**HON. RICHARD DALE SNYDER,**                        :
(individually, and in his                            :
official capacity as Governor)                       :
234 West Baraga Avenue                               :
Marquette, MI 49855;                                 :
                                                     :
and,                                                 :
                                                     :
**STATE OF MICHIGAN,**                               :
G. Mennen Williams Building, 7th Floor               :
525 W. Ottawa Street                                 :
Lansing, MI 48909;                                   :
                                                     :
and,                                                 :
                                                     :
**STATE OF MICHIGAN**                                :
**DEPARTMENT OF ENVIRONMENTAL**:
    **QUALITY**                                      :
523 West Allegan Street                              :
Lansing, MI 48909;                                   :
                                                     :
and,                                                 :
                                                     :
**STATE OF MICHIGAN**                                :
**DEPARTMENT OF HEALTH AND**                         :
    **HUMAN SERVICES,**                              :

2

Capitol View Building                     :
201 Townsend Street                       :
Lansing, MI  48913;                       :
                                          :
_____*Defendants*_____  :

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs and Class Representatives Beatrice Boler, Pastor Edwin Anderson, Mrs. Alline Anderson, and Epco Sales LLC, by their undersigned attorney Valdemar L. Washington and the Law Offices of Valdemar L. Washington, PLLC, and pursuant to Fed. R. Civ. P. 3 and 23, hereby file this class action complaint, by which they sue the Defendants named in the caption above, and present as follows:

1.      This is a class action complaint for equitable relief and damages on behalf of the residents of the City of Flint (hereinafter, "Flint"), arising out of Defendants' acts, under color of law, without legal justification or constitutional authority, acts that unilaterally lead-polluted and *Legionella*-infected the City's water supply, turning it into poison in the process, thus interfering with the Class' constitutional right to contract for the purchase of safe and potable water. Plaintiffs also allege that Defendants have violated their due process rights by unilaterally depriving the citizenry of safe and potable water; failing to act for the welfare of the general public; acting in gross negligence by failing to address a dangerous environmental hazard, *i.e.*, lead leaching from corroded pipes into the water supply

3

as required by the Michigan Safe Water Drinking Act, MCL 325.1001 *et.seq*; in conspiring to commit these constitutional and other deprivations and intentional torts, by actively discriminating against ordinary citizens while, conversely, showing preferential treatment toward certain State of Michigan employees, <u>who were specifically aware of the degradation of water quality in Flint and were provided with safe, potable drinking water alternatives not available to the general public</u>; ignoring citizen complaints regarding the toxicity of the water supply; and, actively misleading the Plaintiffs regarding the dangerous health hazards presented <u>without any process</u> – whether procedural or substantive – to seek relief. Instead, citizens were simply expected to pay their monthly public utility water bills, while being delivered lead-poisoned and *Legionella*-infectious water by the public officials and entities named on the caption above. These claims are asserted under 42 U.S.C. §§ 1983 and 1985 (2015), implicating the said officials in not only the denial of constitutional rights, but also <u>conspiracy to effect that denial</u>, an act that is far more insidious than mere interference with their contract right. This court has subject matter jurisdiction to hear these claims pursuant to 28 U.S.C. §§ 1331 and 2201 (2015), and the Declaratory Judgment Act.

2.    This action is brought on behalf of the Class of individuals through its Class Representatives Beatrice Boler, Pastor Edwin Anderson and Mrs. Alline Anderson, and Epco Sales LLC, on behalf of themselves and those similarly

situated residents whose contractual rights to receive safe, potable water and who were unilaterally abrogated and impeded under color of law, and without justification or due process of law. The Class is governed by Rule 23(a) and 23(b)(1) and (2) of the Federal Rules of Civil Procedure.

3.      In Count I, brought under 42 U.S.C §§ 1983 and 1985, Plaintiffs seek declaratory and injunctive relief as well as damages for the complete impairment of the class's right to contract for safe and potable water, where the impairment of Plaintiffs' contract rights were neither reasonable nor necessary as required by both the federal and state constitutions.

4.      In Counts II and III, brought under 42 U.S.C. § 1983 (2015), Plaintiffs seek damages as well as declaratory and injunctive relief because Defendants have deprived Plaintiffs of a property interest without either procedural or substantive due process, as well as having committed a taking of property without just compensation, in violation of 42 U.S.C. § 1983 (2015), and U.S. Const. Amend. 14. Additionally, Defendants, City of Flint and the State of Michigan acted pursuant to an official policy or custom.

5.       This Court has personal jurisdiction over Defendants named herein as public officials of the State of Michigan sued in their official and individual capacities and public officials, employees of the City of Flint sued in their official and individual capacities as well as the City of Flint and State of Michigan for

5

violations of Plaintiffs' constitutional rights. Similarly, the Court has personal jurisdiction over the Governor of the State of Michigan, in his official capacity, for prospective relief, exclusively.  Additionally, Governor Snyder nor any of the State or City Defendants, nor the municipality, nor the State, are immune from tort liability for actions amounting to gross negligence, as such actions were ultra vires acts; further, no advance notice under Michigan's tort claims statute is required.

6.     Venue is properly sited in this Court, as the Defendants conduct their business in the Eastern District of Michigan.

## PARTIES

7.     Plaintiff Beatrice Boler is a married resident of Flint and mother of two children. Boler received water from the City of Flint and paid the water bill to the City in accordance with the contract. In exchange, Boler and her family received toxic and contaminated water not fit for human use and consumption.

8.     Plaintiffs Pastor Edwin Anderson and Mrs. Alline Anderson are residents of Flint, and homeowners. Pastor and Mrs. Anderson received water from the City of Flint and paid the water bill to the City in accordance with the contract. In exchange, Pastor and Mrs. Anderson received toxic and contaminated water not fit for human use and consumption.

9.     Plaintiff Epco Sales, LLC is a domestic limited liability company

6

located in Flint, Michigan that provides services to the residents of Flint at all times relevant to this Complaint. Plaintiff Epco received its water from the City of Flint and paid its water bill to the City in accordance with its contract. In exchange, Epco received toxic and contaminated water not fit for human use and consumption.

10.     Defendant Darnell Earley (hereinafter "Earley") served as the Emergency Manager of Flint from approximately November 1, 2013, until January 12, 2015, appointed by and served at the pleasure of the Honorable Richard Dale Snyder, Governor of Michigan (hereinafter, "Snyder"). As Emergency Manager, Earley acted under color of law and on behalf of the City of Flint, and therefore, served as both an agent, servant, and/or employee of the City of Flint and the State of Michigan. While serving as the Emergency Manager, Earley, among other things, unilaterally and purposefully abrogated the Plaintiffs' contracts for the purchase of safe and potable water by forcing Plaintiffs to contract for poisonous water at some of the highest rates in the country. Defendant Earley's unilateral abrogation of Plaintiffs' contracts for the purchase of safe and potable water created and escalated the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards, and thus deprived Plaintiffs of life, liberty and property without due process of law.

11.     Defendant Gerald Ambrose (hereinafter "Ambrose") served as the

Emergency Manager of Flint from approximately January 13, 2015, until April 28, 2015, appointed by and served at the pleasure of Snyder. As Emergency Manager, Ambrose acted under color of law and on behalf of the City of Flint, and therefore, served as an agent, servant, and/or employee of both the City of Flint and the State of Michigan. While serving as the Emergency Manager, Ambrose, among other things, unilaterally and purposefully continued to abrogate the Plaintiffs' contracts for the purchase of safe and potable water by forcing Plaintiffs to contract for poisonous water at some of the highest rates in the country. Defendant Ambrose's unilateral abrogation of Plaintiffs' contracts for the purchase of safe and potable water created and escalated the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards, and thus deprived Plaintiffs of life, liberty and property without due process of law.

12. Defendant Dayne Walling (hereinafter, Walling) served as the Mayor of Flint from approximately August 4, 2009, until November 9, 2015. As Mayor, Walling acted under color of law on behalf of the City of Flint, and therefore, served as an agent, servant, and/or employee of the City. As the Mayor of Flint, Walling endorsed the unilateral and purposeful abrogation of Plaintiffs' contracts for the purchase of safe and potable water by forcing Plaintiffs to contract for poisonous water at the highest rates in the country. Defendant Walling created and escalated the dangers of poisoning the water for consumers in Flint, including but

8

not limited to, lead poisoning, *Legionella*, and other health hazards, and thus deprived Plaintiffs of life, liberty and property without due process of law.

13. Defendant City of Flint is a municipal corporation authorized under the laws of Michigan. Defendant Flint, through its agents, servants and employees acting under color of law, provides water services to its consumers. Despite protests from officials within the entity, the City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source, and created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards.

14. Defendant the Honorable Richard Dale Snyder has served as the Governor of Michigan since January 1, 2011. The Governor is vested with executive power pursuant to Art. V, Sec. 1 of the Michigan State Constitution and is responsible for ensuring the health and safety of the citizens of Michigan. As Governor, Snyder acted under color of law and on behalf of the State of Michigan, and therefore, served as an agent, servant, and/or employee of the State. Snyder, as the Chief Executive and singularly responsible for the performance of agencies within the Executive, unilaterally and unreasonably abrogated the Class' right to contract for safe and potable water, thereby creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to,

lead poisoning, *Legionella*, and other health hazards.  Pursuant to Mich. Comp. Laws § 141.1541 (2013)(which effectively incorporated by reference Public Act 4 of 2011) Governor Snyder appointed both Emergency Manager Defendants and retained the power to replace them at any time.   However, despite actual knowledge of the toxic water being supplied to Plaintiffs at the direction of the Emergency Manager Defendants, Snyder failed to take action until October 8, 2015, when he belatedly ordered the City of Flint to disconnect its water supply from the Flint River.  As specifically pleaded, *infra*, as early as January 7, 2015, the Department of Technology, Management and Budget, an Executive agency under the direct supervision and control of the Governor, knew that the Flint River water supply was polluted, corrosive and dangerous so much that its supplied its own State employees in Flint an alternative bottled water source and dispensing coolers, but publically denied that anything was wrong with the Flint public water utility.  *See*, Paul Egan, *Amid Denials, State Employees in Flint Got Clean Water,* THE DETROIT FREE PRESS (January 28, 2016) at 1A, available at: <http://www.freep.com/story/news/local/michigan/flintwatercrisis/2016/01/28/amid-denials-state-workers-flint-got-clean-water/79470650>/ (last accessed, January 30, 2016).

15.    Defendant State of Michigan through its agents, servants, and/or employees including but not limited to Defendants Earley, Ambrose and Snyder,

acting under color of law, unilaterally and unreasonably abrogated the Class' right to contract for safe and potable water, thereby creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards.

16.     The Defendant, Department of Environmental Quality (hereinafter, "MDEQ"), is a State of Michigan executive agency, principally tasked with ensuring the public receives  clear and potable water to drink and air to breathe, as well as monitoring and cleanup of clearly polluted and poisonous water systems. Dan Wyant was the Director of Environmental Quality during most of the relevant time.  Mr. Wyant was a political employee of Defendant Snyder and served at his pleasure.  Defendant MDEQ, through its agents, servants and employees including Wyant, acting under color of law, unilaterally and unreasonably abrogated the Class' right to contract for safe and potable water, thereby creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards. Recently Wyant resigned from his position as Director of the MDEQ.

17.     The Defendant, Department of Health and Human Services, (hereinafter, "MDHHS"), is a State of Michigan executive agency, principally tasked with ensuring the public health, that is "keeping Michigan healthy."    Nick Lyon, the Director of MDHHS, is a political appointee of Defendant Snyder, who

11

serves at the Governor's pleasure. Defendant MDHHS, through its agents, servants and employees including Lyon, acting under color of law, unilaterally and unreasonably abrogated the Class' right to contract for safe and potable water, thereby creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards.

## STATEMENT OF FACTS

18.    The City of Flint is a Michigan municipal corporation and the seat of county government for Genesee County. The City of Flint Code of Ordinances includes provisions for the Plaintiffs to contract with the City for the purchase of safe and potable water at specified rates. Section § 46-16 defines as a "consumer" the person who makes application for water service or who is legally liable for the payment of bills for water service.  The Ordinance likewise provides that the "furnishing of water service shall be deemed the sale of a commodity and the relationship between the Division of Water Supply of the City, and the consumer, that of vendor and purchaser."

19.    For approximately 50 years, the Detroit Water System supplied safe and potable water to Plaintiffs in exchange for Plaintiffs' paying a monthly set water rate based on a measured quantity of water demonstrating actual consumption.

20.    Around 2011, the City initiated a research study to determine if it could use the Flint River as an alternative water source. The study established that the Flint River water was unsafe as a potential water source because it was extremely corrosive and not useable as potable municipal water without the addition of anti-corrosive agents to prevent lead and other heavy metals from leaching from water lines. In fact, as early as 2004, the City was placed on notice through an earlier source-water assessment that the Flint River is "categorized as having a very high susceptibility to potential contaminant sources." Flint city officials have been keenly aware of the dangers surrounding the use of the Flint River as an alternative water source since this time.

21.    In 2011 the State of Michigan legislature considered and voted to adopt Public Act 4, which was purportedly intended to address budget deficits incurred by municipalities. This was not the first time a municipal insolvency statute had been passed or expanded by the Michigan legislature: an emergency financial manager statute was enacted in 1988 and was substantially expanded by the passage of Public Act 72 of 1990, codified as Mich. Comp. Laws §§ 141.1201, *et seq*. (1990). This predecessor of Public Act 4 permitted the Governor to appoint emergency financial managers for local governments and school boards provided certain conditions were met. Public Act 4 expanded the Governor's authority to appoint emergency managers for municipalities facing budget shortfalls.

22.    Public Act 4 was an immense expansion of Executive power. A Governor-appointed emergency manager had much more power under Public Act 4 than under any previous statute, including the power to cancel municipal debts by terminating existing municipal contracts.  No previous municipal insolvency statutes authorized the rejection, modification or termination of existing contracts between the local governments in receiverships and third parties, but that is what Public Act 4 purported to do.

23.    In April of 2014, Defendant Earley, serving as the Emergency Manager for Flint and acting under color of law, unilaterally and purposefully abrogated the Plaintiffs' contracts to purchase safe and potable water supply by forcing Plaintiffs to contract for poisonous and contaminated water at what are ostensibly the highest water rates in the country. Before April 2014, Plaintiffs paid exorbitantly high per gallon process for safe, potable water supplied by Detroit Water and Sewerage Department ("DWSD"), and in exchange, received the benefit of Plaintiffs' contract: safe and potable water.

24.    In April 2014, Defendant Earley unilaterally began acquiring Flint's water from the Flint River rather than from DWSD. The Flint River water was untreated and highly corrosive and caused lead to leach from the city's water delivery system. The Defendants also became aware over time that the water delivered to consumers was unfit for human use and consumption  because it was

contaminated with rust, total coliform and E. coliform and eventually, excessive amounts of Trihalomethanes.

25.    By unilaterally switching the water supply to the Flint River, fully aware that the Flint River water was toxic, unsafe and not potable, Earley unreasonably and without justification abrogated Plaintiffs right to contract for a safe water supply and instead supplied only poisonous, toxic water.

26.    Defendant Earley's unilateral abrogation of Plaintiffs' contracts for safe and potable water created and escalated the dangers of poisoning the water for consumers in Flint, including, but not limited to, rust contamination, excessive amounts of Trihalomethane, lead poisoning, *Legionella*, and other health hazards, and thus deprived Plaintiffs of life, liberty and property without due process of law. Defendant Earley falsely insisted the water was safe for drinking thus continuing to abrogate Plaintiffs contract rights to purchase safe and potable water.

27.    Almost immediately following the switch to the Flint River, the Defendants received complaints that the drinking water smelled rotten, looked foul and tasted terrible. For the next several months, Defendants received such complaints via letters, emails, and phone calls. Defendants ignored Plaintiffs complaints and, acting under color of law, provided no process whatsoever for Plaintiffs to seek redress for Defendants unilateral abrogation of their rights to contract for safe, potable water supply. Defendants instead forced Plaintiffs to

15

contract for toxic, dangerous and unusable water at high prices with no options, recourse or compensation.

28.    Months later, around January of 2015, the City sent consumers a notice stating that the drinking water violated drinking water standards, but nonetheless intentionally and falsely assured them that the water was safe to drink. The letter prompted demands that the City resume using the DWSD which drew its water from Lake Huron, a glacial lake and pristine water source. In fact, the DWSD invited Flint to re-establish the water supply and even offered to waive its $4 million re-connect fee. Defendant Earley declined the offer and instead continued to misrepresent to the consumers that the drinking was safe.

29.    In January of 2015, Defendant replaced Defendant Earley as Emergency Manager. Later that same month, the DWSD again offered Defendant Ambrose the opportunity to re-connect the water supply to Flint, but Defendant Ambrose, acting under color of law, also declined.

30.    Defendant Ambrose also misrepresented that the City's drinking water was safe despite mounting evidence that the water was toxic and unfit for human consumption. Ambrose, among other things, provided no process for citizens to seek redress for the abrogation of the right to contract for safe and potable water. Ambrose ignored ongoing complaints and pleas for safer and better water and was grossly negligent in falsely and recklessly assuring the citizens of Flint that the

water was safe and potable. Defendant Ambrose further conspired, through agreement with Defendant, Department of Environmental Qualify, to present false water test results to support his misrepresentations. That same year, the Flint City Council voted to re-connect its water supply to the DWSD, but Defendant Ambrose rejected the change.

31.    Also during 2015, the Environmental Protection Agency issued a memorandum to the State of Michigan setting forth the hazards that the Flint River water posed to consumers. Scientists, researchers, and other experts who tested the City's water confirmed excess lead levels and brought this data to the attention of numerous government officials. Several public interest groups thus demanded that the City stop using the Flint River as its water supply. Defendants heeded none of these warnings.

32.    In early October of 2015, Genesee County issued an emergency notice to residents advising consumers not to drink their tap water. Rather than re-connecting the water supply to the DWSD, officials decided to provide consumers with ineffective water filters which did not substantially improve the water quality and were not capable of filtering the contaminants that were known at the time to persist within the water supply. The City of Flint remained connected to the Flint Water system until finally, on October 8, 2015, Defendant Snyder ordered a re-connection with the DWSD.

33.   At all relevant times, Plaintiffs contracted and expected to receive safe, potable water in exchange for paying among the highest water rates in the country.  With no other alternative or recourse, Plaintiffs were forced to pay for a poisoned water supply that bore no resemblance to the healthy and potable water source that they had contracted to receive. Plaintiff home owners, renters, commercial establishments, restaurants, churches, day cares, and hospitals were all forced to use this toxic water supply containing, among other poisons, high levels of lead and other metals, *e-coli*, and Trihalomethanes.

34.   Defendant Earley, as Emergency Manager and an agent, servant, and/or employee of the City and State of Michigan, intentionally replaced safe drinking water with a toxic alternative source, and thereby, created and escalated the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards. Defendant Ambrose, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally continued to use a toxic alternative water source, and as a result, prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards. Defendant Walling, as Mayor and agent, servant, and/or employee of the City, approved the decisions that began and continued the use of a toxic alternative water source, and consequently, created, escalated, and prolonged the dangers of poisoning the water

consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards. The City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source, and created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards.  These were acts of *commission*, rather than merely *omission*, occurring because of the gross negligence and deliberate indifference to the consequences of providing *poisoned* water by public officials, who blatantly abused the public trust.

35.    Defendant Snyder belatedly ordered the City of Flint to disconnect its water supply from the Flint River. As a consequence, he participated in creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards. Defendant State of Michigan, through its agents, servants, and/or employees, actively approved the initial and continued use of a toxic alternative water source that was unfit for human consumption, failed to intervene until October of 2015, and thus, created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, *Legionella*, and other health hazards.

36.    As a result of this breach, Plaintiffs suffered damages, because they continued to pay for healthful and potable water each month when in fact, the

water that the City supplied, remained dangerous and unfit for its intended use.

## CLASS ALLEGATIONS

37.    This action is brought by the named Plaintiffs on their own behalf and

on behalf of all others similar situated, as a class action pursuant to Fed.R.Civ.P.

23.  Plaintiffs seek to represent a class defined as follows:  all persons (whether

natural or corporate) in the United States who, at any time between April 2014 and

November 2015, paid, or were billed for, water provided by the City of Flint,

Michigan.

38.    The exact number of Class Members is uncertain and can only be

ascertained through appropriate discovery of the City of Flint's billing records.

However, public information suggests that there are approximately 30,000

purchasers.  As such, the Class is so numerous that the joinder of all members if

impracticable.  The Class is composed of an ascertainable set of persons who paid

the City of Flint for water during a defined time period.    Thus, the Class is

sufficiently numerous to render a class action lawsuit most convenient, practical,

and in the interest of judicial economy for all Plaintiffs to seek redress.

39.    There are numerous questions of law and fact raised the Plaintiffs'

Complaint that are common to all Plaintiffs, including whether Defendants violated

the Constitutional rights of the Class Members, and whether the Plaintiffs and

putative Class Members are entitled to damages caused by the Defendants' acts

and omissions.

40.    The Plaintiffs' Class Representative's claims are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, paid or were billed for water provided by the City of Flint during the time period April 2014 to October 2015.

41.    The factual bases of Defendants' misconduct is common to all Class Members and represents a common thread of misconduct resulting in injury to all members of the Class.

42.    The Plaintiffs' Class Representative will fairly and adequately protect the interests of all Plaintiffs in the Class and pursue the action on behalf of the Class.

43.    Undersigned Counsel is unaware of any conflicts between the Plaintiffs' Class Representative and any other Plaintiff in the Class with respect to the claims, allegations, and damages sought, in this Complaint.

44.    The undersigned Counsel has investigated all claims, allegations, and damages sought in this Complaint, has committed the appropriate resources to represent this Class, and is competent and experienced in class action and mass tort complex litigation.

45.    The prerequisites of Rule 23(b)(3) are satisfied.  The questions of law and fact common to the Class Members predominate over any questions which

many affect only individual members.

46. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of litigation their claims prohibitively high and would therefore have no effective remedy at law.

47. The prosecution of separate actions by the Plaintiffs in the Class would create the risk of inconsistent or varying adjudications with respect to the individual Plaintiffs, which would establish incompatible standards of conduct for Defendants and obstruct the administration of justice. In contrast, the conduct of this action as a class actin presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## CLAIMS FOR RELIEF

### COUNT I

### Deprivation of Constitutional Right - 42 U.S.C. § 1983
### Impairment of Constitutional Right to Contract
### All Plaintiffs Against All Defendants

48. Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

49.    The first clause of Article I, § 10 of the United States Constitution provides:

> No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

50.    The State of Michigan, through adoption  of the Emergency Manager statute, and further, through the implementation of the law by appointment of the aforesaid emergency managers, Defendants Earley and Ambrose, and by the subsequent conduct of agencies acting for the Executive, including Defendant Snyder and Defendant State of Michigan Department of Environmental Quality, acting under color of law, unilaterally and unreasonably impaired the Plaintiffs' obligation(s) of contract arising under their agreement to provide potable water to the general public, in exchange for water utility payments, as alleged, *supra*.

51.    As a result, Plaintiffs were deprived a vital constitutional right, and have been damaged materially, physically, emotionally and financially.

52.    **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT II

### Deprivation of Constitutional Right 42 U.S.C. § 1983
### Due Process
### All Plaintiffs Against All Defendants

53.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

54.    Defendants, acting under color of law, unilaterally abrogated and impaired, unreasonably and without justification, Plaintiffs' rights to contract for purchase safe and potable water, causing Plaintiffs to receive toxic and contaminated water unfit for human use and consumption. Plaintiffs were deprived any process whatsoever to seek redress failure to provide clean, potable water for Defendants' unilateral impairment of their contract to purchase safe and potable water. Plaintiffs were further deprived of any process to seek redress for the deprivation of safe potable water or for the harms caused from being forced to purchase highly toxic water unfit for human use and consumption.

55.    Plaintiffs, thus, were denied both substantive and procedural due process of law, as that right is guaranteed under U.S. Const. Amend XIV.

56.    As such, the Plaintiffs have been deprived a vital constitutional right, and have been damaged materially, physically, emotionally and financially. Defendants, moreover, acted to effect the Constitutional deprivation with actual malice or, alternatively – as alleged, *supra* – with a minimum of gross negligence.

24

57.     **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT III

### Deprivation of Constitutional Right 42 U.S.C. § 1983
### Breach of Duty to Protect Against State-Created Danger
### All Plaintiffs Against All Defendants

58.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

59.     Defendants, under color of law, were expressly responsible to protect the public health, safety and welfare of Plaintiffs. Defendants, in abrogation of this special duty, knowingly, recklessly and callously exposed Plaintiffs to toxic and contaminated water unfit for human use and consumption.

60.     Defendants further placed Plaintiffs in continuous and ongoing danger by misrepresenting that the toxic water was safe and fit for human use and consumption. Because the State affirmatively created the danger, it had a duty to protect the Plaintiffs.

61.     As a result, Plaintiffs were deprived damaged in their property, personal health, and economically by the inherently dangerous activity of the aforesaid State personnel.

62.     Plaintiffs were further denied both procedural and substantive due

process of law, as alleged, *supra*, and suffered the various injuries of which they have already complained in the paragraphs above.

63.    **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

### COUNT IV

**Deprivation of Constitutional Right – 42 U.S.C. § 1983**
**Equal Protection Violation – U.S. Const. Amend. XIV**
**All Plaintiffs Against All Defendants**

64.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

65.    Defendants, acting under color of law, unilaterally and unreasonably impaired the Plaintiffs' obligation(s) of contract arising under their agreement to provide potable water to the general public, in exchange for water utility payments. No reasonable, rational or articulable basis exists for Defendants' ongoing and continuous supply of toxic water that is unfit for human use to Plaintiffs solely and exclusively. No other Michigan citizen has suffered the callous and purposeful provision of toxic water that is unfit for human use and consumption at great expense of property, liberty, health and safety.

66.    Defendants differing, disparate and dishonest deprivation of Plaintiffs constitutional and common law rights and benefits deprived Plaintiffs of their

constitutional right to equal protection of the law, as that right is set forth in U.S. Const. Amend. XIV.

67.     As a result of the disparate and discriminatory treatment, Plaintiffs were damaged in their property, their personal health, and economically, as a direct consequence of the constitutional deprivation.

68.     **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT V

**42 U.S.C. §1983 – Unconstitutional Deprivation of Property Interest Without Due Process or Just Compensation
All Plaintiffs Against All Defendants**

69.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

70.     The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of property without due process of law.

71.     Section § 46-16 *et. seq.* of the Flint City Ordinance establish that Defendant City of Flint and Plaintiffs have contracted for  provision of safe and potable water, and as such, are contracts establishing property rights under state law. Defendants then knowingly and unreasonably abrogated Plaintiffs' contract

rights by providing toxic and contaminated water unfit for human use and consumption.

72.     Prior to the deprivation of a property interest, Plaintiffs were not given any opportunity to be heard upon notice of the deprivation of their property interests.

73.     Defendants did not provide Plaintiffs with notice and an opportunity to be heard at a meaningful hearing, nor have Defendants provided Plaintiffs with just compensation for their taking of Plaintiffs' property interests.

74.     **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT VI

### Conspiracy To Deprive of Constitutional Right – 42 U.S.C. § 1985
### All Plaintiffs Against All Defendants

75.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

76.     As alleged, *supra*, the Defendants, acting under color of law, combined, conspired and confederated to impair Plaintiffs constitutional rights by falsely claiming that the Flint River water supply was safe and potable when Defendants knew and recklessly disregarded all evidence to the contrary.

Defendants knowing, concerted and fraudulent actions led to the deprivation of Plaintiffs rights, including but not limited to:

    a.    abrogating Plaintiffs constitutional right to contract for safe and potable water by unilaterally provision of toxic water unfit for human use and consumption unreasonably and without justification.

    b.    denying Plaintiffs any process or redress for the harms caused by Defendants unilateral impairment of Plaintiffs contract rights, including but not limited to, all harms to property, liberty, health and safety caused by exposure to a toxic water supply.

    c.    denying Plaintiffs equal protection under law purposefully by, among other ways, providing poisonous water to residents of Flint, including Plaintiffs, at great expense of property, liberty, health and safety, thus irrationally and arbitrarily denying Plaintiffs the same benefits of safe and potable water provided to all other citizens of Michigan.

    d.    breaching the special duty to protect the public health, and safety by knowingly, recklessly and callously creating the danger to Plaintiffs by providing toxic and contaminated water unfit for human use and consumption.

77.    As described, *supra*, Plaintiffs were and continue to be horribly and irreparably damaged.

78.   **WHEREFORE**,   Plaintiffs   demand   compensatory   damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT VII

### Breach of Contract
### All Plaintiffs Against All Defendants

79.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

80.   The Defendants breached their contract with Plaintiffs to provide safe drinking water in exchange for payment. Defendant Earley, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally replaced safe drinking water with a toxic alternative source, and thereby, created and escalated the dangers of lead poisoning. Defendant Ambrose, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally continued to use a toxic alternative water source that was unfit for human use and consumption, and as a result, prolonged the dangers of lead poisoning. Defendant Walling, as Mayor and agent, servant, and/or employee of the City, approved the decisions that began and continued the use of a toxic alternative water source that was unfit for human use and consumption, and consequently, created, escalated, and prolonged the dangers of lead poisoning. The City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source,

and created, escalated, and prolonged the dangers of lead poisoning and other health hazards among its consumers. Defendant Snyder failed to take action until October 8, 2015, when he belatedly ordered the City of Flint to disconnect its water supply from the Flint River. As a consequence, he participated in creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards. Defendant State of Michigan, through its agents, servants, and/or employees, passively approved the initial and continued use of a toxic alternative water source that was unfit for human use and consumption, failed to intervene until October of 2015, and thus, created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards.

81.    The Plaintiffs made monthly payments to the City of Flint in exchange for safe drinking water that was fit for human use and consumption and free of contaminants such as rust, lead, other heavy metals, excessive *E. coliform* and *coliform* bacteria, and excessive amounts of Trihalomethane.

82.    As a result of the Defendants' breach of contract, Plaintiffs sustained physical, emotional, mental, and financial injuries from the toxic water, including, but not limited to, the monthly payments made in exchange for unusable water.

83.    **WHEREFORE**, Plaintiffs demand compensatory damages,

declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT VIII

### Unjust Enrichment
### All Plaintiffs Against All Defendants

84.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

85.    The Plaintiffs were sold toxic drinking water that was unfit for human consumption instead of receiving clean drinking water, as promised.

86.    The Defendants unjustly received the benefits of payments executed by Plaintiffs in exchange for contaminated and water that was unfit for human consumption, and used those payments for the operation of the City of Flint. Defendant Earley, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally replaced safe drinking water with a toxic alternative source, and thereby, created and escalated the dangers of lead poisoning and other health hazards. Defendant Ambrose, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally continued to use a toxic alternative water source, and as a result, prolonged the dangers of lead poisoning and other health hazards. Defendant Walling, as Mayor and agent, servant, and/or employee of the City, approved the decisions that began and continued the use of a toxic alternative water source, and consequently, created, escalated, and prolonged the

32

dangers of lead poisoning and other health hazards. The City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source, and created, escalated, and prolonged the dangers of lead poisoning and other health hazards among its consumers. Defendant Snyder failed to take action until October 8, 2015, when he belatedly ordered the City of Flint to disconnect its water supply from the Flint River. As a consequence, he participated in creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards. Defendant State of Michigan, through its agents, servants, and/or employees, passively approved the initial and continued use of a toxic alternative water source, failed to intervene until October of 2015, and thus, created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards.

87.    As a result of these acts and omissions, Plaintiffs sustained physical, emotional, mental, and financial injuries from the toxic water, including, but not limited to, the monthly payments made in exchange for toxic and contaminated water not fit for human use and consumption.

88. **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT IX

### Breach of Implied Warranty of Merchantability
### All Plaintiffs Against All Defendants

89.     Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.     The Defendants breached the implied warranty of merchantability by supplying water contaminated with rust, lead, excessive amounts of total *coliform, E. Coliform*, and Trihalomethane sufficient to pose a threat to human health and safety and to render the water unfit for its intended use. In exchange for payment, the Defendants impliedly promised, and indeed certified, fitness of the water for use as safe and potable drinking water. Instead, Defendant Earley, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally replaced safe drinking water with a toxic alternative source that was unfit for its intended use by virtue of the presence myriad contaminants, and thereby, created and escalated the dangers of lead poisoning and other health hazards. Defendant Ambrose, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally continued to use a toxic alternative water source, and as a result, prolonged the dangers of lead poisoning and other health hazards. Defendant Walling, as Mayor and agent, servant, and/or employee of the City, approved the decisions that began and continued the use of a toxic alternative water source, and consequently, created, escalated, and prolonged the dangers of lead poisoning

illness and other health hazards. The City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source, and created, escalated, and prolonged the dangers of lead poisoning illness and other hazards. Defendant Snyder failed to take action until October 8, 2015, when he belatedly ordered the City of Flint to disconnect its water supply from the Flint River. As a consequence, he participated in creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards. Defendant State of Michigan, through its agents, servants, and/or employees, passively approved the initial and continued use of a toxic alternative water source, failed to intervene until October of 2015, and thus, created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards.

91.     The Plaintiffs made monthly payments to the City of Flint in exchange for safe drinking water, when in fact, the Defendants supplied toxic water that was unfit for human consumption.

92.     As a result of these acts, Plaintiffs sustained physical, emotional, mental, and financial injuries from the toxic water, including, but not limited to, the monthly payments made in exchange for toxic and contaminated water unfit for human use and consumption.

93.    **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

## COUNT X

### Violation of the Michigan Consumer Protection Act
### All Plaintiffs Against All Defendants

94.    Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

95.    The Defendants violated the Michigan Consumer Protection Act, M.C.L.A. 445.903, which prohibits unfair, unconscionable and deceptive acts. The Defendants violated that Act by knowingly making false statements to consumers regarding the safety of their drinking water. Defendant Earley, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally replaced safe drinking water with a toxic alternative source, and thereby, created and escalated the dangers of lead poisoning and other health hazards. Defendant Ambrose, as Emergency Manager and an agent, servant, and/or employee of the City, intentionally continued to use a toxic alternative water source, and as a result, prolonged the dangers of lead poisoning and other health hazards. Defendant Walling, as Mayor and agent, servant, and/or employee of the City, approved the decisions that began and continued the use of a toxic alternative water source, and consequently, created, escalated, and prolonged the dangers of lead poisoning and

other health hazards. The City of Flint, through its policy makers, approved the initial and continued use of a toxic alternative water source, and created, escalated, and prolonged the dangers of lead poisoning and other health hazards. Defendant Snyder failed to take action until October 8, 2015, when he belatedly ordered the City of Flint to disconnect its water supply from the Flint River. As a consequence, he participated in creating, escalating, and prolonging the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards. Defendant State of Michigan, through its agents, servants, and/or employees, passively approved the initial and continued use of a toxic alternative water source, failed to intervene until October of 2015, and thus, created, escalated, and prolonged the dangers of poisoning the water consumers in Flint, including but not limited to, lead poisoning, legionella, and other health hazards.    Through these acts, the Defendants intentionally and consistently misrepresented to consumers that their water was safe and suitable for drinking, while knowing that it contained, among other poisons, toxic levels of lead, excessive levels of total *coliform* and *E. Coliform*, excessive levels of Trihalomethane and rust. The Defendants' statements were unfair and deceptive, on which Plaintiff(s) relied, consumed the toxic water, and made monthly payments to the City of Flint.

96.    As a result of these acts, Plaintiffs sustained physical, emotional,

mental, and financial injuries from the toxic water, including, but not limited to, the monthly payments made in exchange for toxic and contaminated water unfit for human use and consumption.

97.   **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

**COUNT XI**

**Conversion**
**All Plaintiffs Against All Defendants**

98.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

99.   The Defendants, through the wrongful exercise or assumption of authority, knowingly deprived Plaintiffs of the safe, potable water for which they contracted, and instead provided toxic water unfit for human use and consumption.

100. Defendants, through the wrongful exercise or assumption of authority, took and converted to their own use Plaintiffs' property, including periodic water payments and safe, potable water to which Plaintiffs were entitled, depriving Plaintiffs of the possession and use of the same, and causing substantial damages to Plaintiffs.

101. **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and

38

interest.

## COUNT XII

### Gross Negligence
### All Plaintiffs Against All Defendants

102.   Plaintiffs incorporate and adopt each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

103.   Defendants owe a duty of care to Plaintiffs to provide healthy, potable drinking water and to minimize, ameliorate, and eliminate environmental harms, pursuant to the statutory authority, cited *supra*.

104.   Defendants breached that duty by, among other things, knowingly, recklessly, and callously providing Plaintiffs a toxic water supply unfit for human use and consumption while publicly insisting that the water is safe and fit; knowingly, recklessly and callously refusing to return the Plaintiffs to a safe and potable water supply despite ample evidence that the Flint water was highly toxic; acknowledging Flint water was unfit for human use and consumption by providing its own State employees in Flint bottled water taking no contemporaneous action to protect Plaintiffs. Defendants' conduct demonstrated a substantial lack of concern as to whether an injury results.

105.   As a consequence, Plaintiffs were injured, continue to be injured, and will suffer likely permanent and disabling injuries into the future, as a result of the Defendants knowing, reckless and callous acts.

106. **WHEREFORE**, Plaintiffs demand compensatory damages, declaratory and injunctive relief, and punitive damages as appropriate, as well as costs and interest.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs request the following relief:

    a. An Order certifying this lawsuit as a Class Action;

    b. An Order declaring the Defendants liable for each Cause of Action stated above;

    c. Compensatory damages as requested above;

    d. Consequential damages as appropriate;

    e. Punitive damages as appropriate;

    f. Reasonable attorneys' fees and litigation expenses; and

    g. Any other relief, including injunctive relief, as this Court deems fair.

Respectfully Submitted,

Date: January 31, 2016

*/S/ Valdemar L. Washington*
Valdemar L. Washington P-27165
Valdemar L. Washington, PLLC
Attorney for Plaintiffs
718 Beach Street/ P.O. Box 187
Flint, MI 48501-0187
Ph 810.407.6868
Fax 810.265.7315
Email: vlwlegal@aol.com
P-27165

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on the issues set forth in their complaint.

Respectfully Submitted,

Date: January 31, 2016          */S/ Valdemar L. Washington*
                                Valdemar L. Washington P-27165
                                Valdemar L. Washington, PLLC
                                Attorney for Plaintiffs
                                718 Beach Street/ P.O. Box 187
                                Flint, MI 48501-0187
                                Ph 810.407.6868
                                Fax 810.265.7315
                                Email: vlwlegal@aol.com
                                P-27165